UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

TRINH MY GREEN,

          Plaintiff,

    v.

BMW OF NORTH AMERICA LLC, *et al.*,

          Defendants.

Case No. 25-cv-03489-SI

**ORDER DENYING WITHOUT PREJUDICE DEFENDANT AUTOLIV INC.'S MOTION TO DISMISS AND DEFENDANT BMW AG'S MOTION TO QUASH FOR IMPROPER SERVICE; SETTING CASE MANAGEMENT CONFERENCE FOR JULY 10 AT 3PM**

Re: Dkt. Nos. 84, 87

There are two motions scheduled for a hearing on July 17, 2026: defendant Autoliv, Inc. has filed a motion to dismiss for lack of personal jurisdiction, and defendant BMW AG has filed a motion to quash service of summons. The Court concludes both motions are appropriate for resolution without oral argument and VACATES the hearing. For the reasons set forth below, the Court DENIES both motions without prejudice to renewal after Green conducts jurisdictional discovery regarding Autoliv, Inc. and its subsidiaries, as well as discovery about whether BMW of North America, LLC ("BMW NA") is a "general manager" for BMW AG under California law.

The Court schedules a case management conference for July 10 at 3 p.m. via zoom. As discussed at the May 15, 2026 conference, the Court is not setting trials past 2026. The parties should be prepared to discuss scheduling and whether they consent to a magistrate judge of their choice, or wish to be randomly reassigned to a district court judge.

## DISCUSSION

**I.      Defendant Autoliv, Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction**

On April 3, 2026, self-represented plaintiff Trinh My Green filed an amended complaint

naming Autoliv, Inc. as a defendant.  Green alleges that Autoliv, Inc. manufactured the airbag module and inflator that malfunctioned and injured her when she was involved in an accident while driving her 2006 BMW 525i.  Amended Compl. ¶¶ 14-15.  Green named Autoliv, Inc. as a defendant after an engineer employed by defendant BMW NA filed a declaration stating that "Autoliv was the original equipment manufacturer ('OEM') and supplier of the driver's airbag module installed in the subject 2006 BMW 525i ('subject vehicle') at the time of manufacture and assembly."  Avilés Decl. ¶ 4.

Autoliv, Inc. has moved to dismiss the amended complaint for lack of personal jurisdiction.  Autoliv, Inc. is a Swedish corporation incorporated under the laws of the State of Delaware, with its principal place of business located in Stockholm, Sweden.  Nellis Decl. ¶¶ 7-8.[1]  Anthony Nellis, Autoliv, Inc.'s Executive Vice President-Legal Affairs, General Counsel and Secretary, has filed a declaration stating that "Autoliv, Inc. functions solely as a holding corporation" and "does not design, manufacture, assemble, produce, sell, deliver, supply, lease, or distribute any components or safety restraint systems including the airbag system components or modules in the 2006 BMW 525i," including specifically the 2006 BMW 525i that is the subject of the amended complaint.  *Id*. ¶¶ 5-6.  Nellis also states that Autoliv, Inc. is not licensed to and does not conduct any business in California, does not have an office or employees in California, "does not derive revenue from" California, does not maintain any bank accounts in California, and has not owned or leased any real or personal property in the State.  *Id*. ¶¶ 10-13.  Nellis states that Autoliv, Inc. "maintains a separate corporate existence from its subsidiaries" and "does not exercise any control over its subsidiaries' operations and maintains separate books and records from its subsidiaries."  *Id*. ¶¶ 14-15.  Nellis does not identify Autoliv, Inc.'s subsidiaries, nor does Nellis state which subsidiary or subsidiaries manufacture and supply airbag system components or modules, including whether any Autoliv subsidiary manufactured and supplied the airbag module in plaintiff's 2006 BMW 525i.

Green contends that this Court has personal jurisdiction over Autoliv, Inc., and she requests

---

[1] Autoliv's motion states that Autoliv, Inc. has its principal place of business in Delaware. Motion at 1.  The Court assumes that this is a typo as both the Nellis declaration and Autoliv, Inc.'s Corporate Disclosure Statement state that Autoliv, Inc.'s principal place of business is Sweden.  *See id*.; Dkt. No. 84-2 (disclosure statement).

the opportunity to conduct limited discovery into jurisdictional issues, including which Autoliv entity manufactured and supplied the airbag module that was incorporated into her car. The Court has "broad discretion" to permit or deny jurisdictional discovery, and the Ninth Circuit has instructed that "discovery should be granted when . . . the jurisdictional facts are contested or more facts are needed." *Laub v. U.S. Dep't of Interior*, 342 F.3d 1080, 1093 (9th Cir. 2003). The Court finds that jurisdictional discovery is appropriate here in light of the Avilés declaration stating that "Autoliv" manufactured and supplied the airbag module in Green's vehicle. Such discovery shall encompass Autoliv Inc.'s contacts with California, as well as which Autoliv subsidiary(ies) manufactured and supplied the airbag module in Green's vehicle and the relationship between Autoliv Inc. and the relevant subsidiary(ies). The Court encourages Green to contact the Legal Help Center for assistance with formulating the discovery discussed in this order. The Legal Help Center can be contacted by email at fedpro@sfbar.org or by calling (415) 782-8982.

Accordingly, the Court DENIES Autoliv Inc.'s motion to dismiss without prejudice to renewal after the parties have engaged in the above-described discovery.

## II.    Defendant BMW AG's Motion to Quash

Defendant BMW AG is a German company and defendant BMW NA is an American subsidiary of BMW AG. Although the amended complaint alleges that BMW NA is a wholly owned subsidiary of BMW AG, BMW AG states that BMW NA is in fact an indirect subsidiary that is separated from BMW AG by four intermediary entities, and BMW AG argues *inter alia* that it is a "separate distinct legal entity" and that the two entities have "separate procedures and policies for their respective operations." *See* Reply at 2.

Federal Rule of Civil Procedure 4(h) provides that a foreign corporation may be served (1) "by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention," Fed. R. Civ. P. 4(f)(1); (2) "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process," Fed. R. Civ. P. 4(h)(1)(B); or (3) in a manner consistent with state law "where the district court is located or where service is

United States District Court
Northern District of California

3

made," Fed. R. Civ. P. 4(e)(1), (h)(1)(A).  Green served BMW AG by serving BMW NA in California, and she contends that this service is consistent with California law.  BMW AG contends that it may not be served through BMW NA and that Green must serve BMW AG pursuant to the Hague Convention.

California law permits substitute service on a domestic subsidiary acting as a foreign corporation's "general manager."  *See Yamaha Motor Co., Ltd. v. Sup. Ct.*, 174 Cal. App. 4th 264, 273-74 (2009) (discussing relevant California statutes and caselaw); *see also United States ex rel. Miller v. Pub. Warehousing Co. KSC*, 636 F. App'x 947, 948 (9th Cir. 2016) ("California law, in turn, permits service upon a corporation by delivering a copy of the summons and the complaint to 'a general manager' of the corporation. CCCP § 416.10(b).  A related service-of-process statute, California Corporations Code (CCC) § 2110, permits service of process upon a foreign corporation transacting business in California by serving 'its general manager in this state.'  The term 'general manager' is not defined in either statute.").  Courts have held that a subsidiary is a "general manager" if the domestic "representative had ample regular contact [with the foreign party] so that it was reasonably certain that the representative would apprise the manufacturer of the service," *Yamaha Motor Co.*, 174 Cal. App. 4th at 273 (internal quotes omitted), and if the relationship between the foreign and domestic entities give the foreign entity "substantially the business advantages that it would have enjoyed if it conducted its business through its own offices or paid agents in the state." *Falco v. Nissan No. America Inc.*, 987 F.Supp.2d 1071, 1076-77 (C.D. Cal. 2013) (internal quotation marks and citation omitted, discussing cases involving domestic subsidiaries of foreign automotive corporations where domestic subsidiaries were found to be "general managers" under California law for service of process).

Although she does not use the term "general manager" in her opposition, Green argues that the relationship between BMW NA and BMW AG is such that she should be permitted to serve BMW AG by serving BMW NA.  In light of her self-represented status, the Court construes this argument as contending that BMW NA is BMW AG's "general manager" under California law. Green asserts that BMW NA is BMW AG's exclusive importer and distributor of BMW AG's vehicles; that when vehicles manufactured by BMW AG are recalled, the recall is done through BMW NA; and that BMW NA is the American representative for BMW AG.

United States District Court
Northern District of California

BMW AG argues that the cases cited by Green that permit substitute service on a domestic subsidiary of a foreign corporation are distinguishable because they involve "uniquely integrated corporate structures involving wholly owned subsidiaries that are not present here."  Reply at 3 (addressing *Yamaha Motor Co.*, 174 Cal. App. 4th 264 (2009), and *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 707 (1988)).  While BMW AG is correct that *Yamaha Motor Company* involved a wholly owned subsidiary of a foreign corporation, that fact was not dispositive, and instead the California Court of Appeal focused on the facts showing that Yamaha-America was the "American face of the Japanese company," noting that Yamaha-America has "an exclusive arrangement to sell the manufacturer's products, provides warranty service, English owner manuals, does testing, marketing, and *receives complaints* about the manufacturer's products." *Yamaha Motor Co.*, 174 Cal. App. 4th at 274 (emphasis in original).[2]  However, *Yamaha* did not hold that only a wholly owned subsidiary could be considered a "general manager" under California law, and to the contrary, the *Yamaha* court relied on and discussed the California Supreme Court's decision in *Cosper v. Smith & Wesson Arms Company*, 53 Cal. 2d 77, 84 (1959), which addressed the "general manager" question outside of a subsidiary/parent relationship.  In *Cosper*, the California Supreme Court held that a nonexclusive California sales representative named Lookabaugh could be considered the "general manager" of Smith and Wesson because the representative had "ample regular contact" with Smith and Wesson so that it was "reasonably certain" that the representative would apprise the company of service, and the nature of the relationship was such that it gave Smith and Wesson "substantially the business advantages that it

---

[2] *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 707 (1988), is relevant insofar as the Supreme Court held that the Hague Convention does not apply when the internal law of the forum does not require service abroad.  In *Schlunk*, the plaintiff brought a wrongful death lawsuit against Volkswagen Aktiengesellschaft ("VW-Germany"), a German company, and its wholly owned subsidiary, Volkswagen America ("VW-America").  Schlunk served VW Germany by serving VW America in Illinois as VW Germany's agent.  VW Germany contended that service on it was ineffective and that it could only be served pursuant to the Hague Convention.  Illinois state courts held that under the Illinois long-arm statute, VW America was an "involuntary agent" for service of process for VW Germany, and because service was accomplished within the United States, the Hague Convention did not apply.  The Supreme Court affirmed the lower state courts and held that the Hague Convention applies only when the internal law of the forum requires service abroad.  "Where service on a domestic agent is valid and complete under both state law and the Due Process Clause, our inquiry ends and the Convention has no further implications." *Schlunk*, 486 U.S. at 707.  *Schlunk* did not involve or discuss who is a "general manager" under California law.

would have enjoyed 'if it conducted its business through its own offices or paid agents in the state[.]'" *Cosper*, 53 Cal. 2d at 83-84.  The Court stated,

> Whether in any given case, the person served may properly be regarded as within the concept of the statute depends on the particular facts involved. [Citations.] Here, it reasonably appears that Lookabaugh as a manufacturer's representative actively engaged in promoting the sales of Smith and Wesson and earning commissions through such sales, would have ample regular contact with Smith and Wesson and would be of 'sufficient character and rank to make it reasonably certain' that Smith and Wesson would be apprised of the service of process.  Neither the fact that Lookabaugh's organization was designated as 'manufacturer's representatives' nor the fact that such representatives promoted sales 'on their own time and expense' is determinative here.  Whether Smith and Wesson was operating 'through an independent contract, agent, employee or in any other manner' [citations], the essential factor is that Lookabaugh in his selling and advertising activities was performing services for Smith and Wesson and providing it with the opportunity for 'regular contact with its customers and a channel for a continuous flow of business into the state.' [Citation.] In short, the arrangement of Smith and Wesson with Lookabaugh appears, in the light of the president's affidavit, to have given Smith and Wesson substantially the business advantages that it would have enjoyed 'if it conducted its business through its own offices or paid agents in the state' [citation]; and such arrangement was sufficient to constitute Lookabaugh 'the general manager in this State' for purposes of service of process on Smith and Wesson. (Corp. Code, § 6500.)"

*Id*.  In reaching its holding, the *Yamaha* court noted that *Cosper* was still good law,[3]

> *Cosper* applies a fortiori to this case—that is, the relationship between the manufacturer's representative and the manufacturer in *Cosper* was far less intimate, far less connected, and far less interrelated than the relationship between Yamaha–America and Yamaha–Japan in the case before us.  If, in *Cosper*, a sporting-goods-oriented non-exclusive purveyor of Smith and Wesson guns on the West Coast was a "general manager in this State" under Corporations Code section 6500, how much more so is Yamaha–America the "general manager in this State" here, where (unlike *Cosper*), Yamaha–America is the American face of the Japanese company . . . .

*Yamaha Motor Co.*, 174 Cal. App. 4th at 274.

In sum, the question of whether BMW NA is the "general manager" of BMW AG under California law such that substitute service is proper requires a factual inquiry regarding the relationship between the two entities, including whether they have "ample regular contact" and the

---

[3] Other courts addressing who is a "general manager" under California law have similarly held that *Cosper* remains good law and thus is binding.  *See*, *e.g.*, *Falco*, 987 F. Supp. 2d at 1077-78 (rejecting argument that *Cosper* was wrongly-decided, noting that the California Supreme Court denied a petition to review *Yamaha Motor Company* in 1989 despite language in *Yamaha* inviting the Court to revisit *Cosper*, and stating, "Nissan–Japan further argues that *Cosper* is no longer good law because it cited language from state statutes that were subsequently revised. The court is unpersuaded. California and federal district courts have relied on the "character and rank" and "substantially the business advantages" language from *Cosper* in more than a dozen cases since *Cosper* was decided in 1959. . . .).

United States District Court
Northern District of California

extent to which the relationship affords BMW AG business advantages in California. *Cf. Falco*, 989 F. Supp. 2d at 1077 ("Because the requirements first described in *Cosper* are met, Nissan-Japan's contentions, taken as true, that Nissan-Japan and Nissan-America are independent businesses that strictly observe corporate formalities and that Nissan-Japan does not exercise control over Nissan-America's activities have no effect on this conclusion.").[4] The factual record before the Court is undeveloped, and the Court GRANTS Green leave to conduct discovery on these issues. Accordingly, the Court DENIES BMW AG's motion to quash, without prejudice to renewal after such discovery has been taken.

**IT IS SO ORDERED**.

Dated: July 5, 2026

_____

SUSAN ILLSTON
United States District Judge

---

[4] During the Court's research on the present motion, the Court has become aware of at least one case in which a court has held that BMW NA is the "general manager" under California law for BMW AG and thus that service on BMW NA is sufficient to effectuate service on BMW AG. *See Arigna Tech. Ltd. v. Bayerische Motoren Werke AG*, No. 2:21-CV-00172-JRG, 2022 WL 23065828, at *4-5 (E.D. Tex. Jan. 20, 2022); *Arigna Tech. Ltd. v. Bayerische Motoren Werke AG*, 697 F. Supp. 3d 635, 643-44 (E.D. Tex. 2023).